# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GREEN PLAINS RENEWABLE )
ENERGY INC., GREEN PLAINS )
WOOD RIVER LLC, and GREEN )
PLAINS FAIRMONT LLC, )
     )
     )
        Plaintiffs, ) C.A. No. N14C-01-233 MMJ CCLD
     )
        v. )
     )
ETHANOL HOLDING COMPANY, )
LLC, )
     )
        Defendant. )

Submitted: July 21, 2016
Decided: August 19, 2016
Corrected: January 25, 2017

Upon Plaintiffs' Motion for Summary Judgment
**GRANTED IN PART**
**DENIED IN PART**

## OPINION

John A. Sensing, Esquire, Jesse L. Noa, Esquire, Potter Anderson & Corroon LLP, Omri E. Praiss, Esquire (Argued), Joseph P. Conran, Esquire, Tanya M. Maerz, Esquire, Husch Blackwell LLP, Attorneys for Plaintiffs

Michael D. DeBaecke, Esquire, Blank Rome LLP, John P. Passarelli, Esquire (Argued), James M. Sulentic, Esquire, Carol A. Svolos, Esquire, Kutak Rock LLP, Attorneys for Defendant

**JOHNSTON, J.**

## PROCEDURAL CONTEXT

Plaintiffs Green Plains Renewable Energy, Inc., Green Plains Wood River, LLC, and Green Plains Fairmont, LLC (collectively "Green Plains") brought this action for declaratory judgment against Defendant Ethanol Holding Company, LLC ("EHC"). Green Plains Renewable Energy, Inc. is an Iowa corporation with its principal place of business in Omaha, Nebraska. Green Plains Wood River, LLC, Green Plains Fairmont, LLC, and EHC are all Delaware limited liability companies.

On January 27, 2014, Green Plains filed its Complaint, seeking the Court's interpretation and construction of certain provisions of the Asset Purchase Agreement ("APA"), which was entered into between Green Plains and EHC. Green Plains alleged that EHC assumed certain liabilities under the APA, which trigger two post-closing purchase price adjustments.

On March 24, 2014, EHC filed its Motion to Dismiss. EHC argued that the terms of the APA are unambiguous and that EHC did not assume the alleged liabilities. Oral argument was heard on December 4, 2014.

By Opinion dated February 9, 2015, the Court denied EHC's Motion to Dismiss. The Court held:

> Viewing the pleadings in the light most favorable to Green Plains, the Court finds that it is reasonably conceivable that Green Plains could succeed on the merits of its declaratory judgment action. The Court finds that the APA is ambiguous as to whether EHC assumed

2

liabilities because the APA is reasonably susceptible of two different interpretations. Extrinsic evidence of the parties' intent must be fleshed out during discovery.[1]

On May 13, 2016, Green Plains filed its Motion for Summary Judgment. Oral argument was heard on July 21, 2016.

## UNDISPUTED FACTS

This case involves two different contracts between several different parties. Accordingly, many attorneys and company executives are involved. For ease of reference, a chart of the relevant individuals is included below.

| | |
|---|---|
| **Michelle Mapes** | Executive Vice President, General Counsel, and Corporate Secretary of Green Plains, who was the co-lead negotiator of the APA on behalf of Green Plains |
| **Christopher Wu** | "Team Leader" from Carl Marks Advisory Group, which was retained by EHC's counsel, Kutak Rock LLP, as financial advisor to First National Bank Omaha ("FNB Omaha"), primarily in connection with the negotiation of the Deed in Lieu of Foreclosure Agreement ("DILFA") |
| **Andrew Wong** | Works for FNB Omaha and is the President of EHC, who was involved in the negotiation of the DILFA and APA |
| **Joel Wiegert** | Attorney from Kutak Rock LLP, who was the lead attorney negotiating the DILFA on behalf of FNB Omaha |

---

[1] *Green Plains Renewable Energy Inc. v. Ethanol Holding Co., LLC*, 2015 WL 590493, at *6 (Del. Super.).

Buffalo Lake Energy, LLC ("Buffalo Lake") and Pioneer Trail Energy, LLC ("Pioneer Trail") were owners and operators of two ethanol production plants. On September 25, 2006, pursuant to a Credit Agreement, certain lenders, including FNB Omaha (collectively, "Lenders"), made loans to Buffalo Lake, Pioneer Trail, and BFE Operating Company, LLC, a wholly-owned subsidiary of BioFuel Energy (collectively, "Borrowers"). These loans financed the acquisition, construction, and operation of two Ethanol Plants.

Borrowers subsequently defaulted on their loans. Rather than having Lenders foreclose on the assets, Borrowers and Lenders negotiated an arrangement under which the search for a qualified buyer for the Ethanol Plants could be conducted and, ultimately, Borrowers' assets could be transferred in a controlled manner. This conveyance was set forth in the DILFA. Over the course of several months, Lenders and Borrowers negotiated the DILFA. The DILFA was executed on April 11, 2013, and was placed in escrow pending closing. EHC became the acquiring entity under the DILFA. Upon conveyance of the assets to EHC, Borrowers were released from personal liability under the Credit Agreement.

The DILFA included two Assignments of Contracts—one for Buffalo Lake and one for Pioneer Trail.[2] Section 1 of the Assignments of Contracts provides: "Assignor hereby assigns, conveys, and transfers to Assignee all of Assignor's

---

[2] The relevant terms of the Assignments of Contracts are the same.

4

right, title, and interest" in certain defined contracts. Section 2 provides: "Assignee hereby accepts such assignment of Assignor's right, title, estate and interest in, to and under solely those contracts that are set forth in Schedule I attached hereto."

When Borrowers executed the Assignments of Contracts, a few items were intentionally left blank and were to be filled in by Lenders' Administrative Agent at a later date. Among the items left blank was the list of contracts to be included in Schedule I. The parties anticipated that the Administrative Agent would identify and provide a list of the assumed contracts some time on or before closing.

In August 2013, Christopher Wu, on behalf of Lenders, contacted Michelle Mapes, general counsel to Green Plains, to inquire about a possible purchase of the Ethanol Plants. On November 4, 2013, EHC and Green Plains entered into the Asset Purchase Agreement ("APA"), wherein Green Plains agreed to purchase assets from EHC, specifically, the ethanol production assets transferred from Borrowers to EHC under the DILFA. In Section 4.11 of the APA, EHC represented that the DILFA "is in full force and effect and is the valid and binding obligation of the Seller enforceable according to its terms." Under the Bill of Sale associated with the APA, Green Plains agreed to pay all obligations and liabilities of Seller with respect to the purchased assets arising and relating to periods after the effective date.

5

The APA also included a "true-up" provision. Section 2.03 provided that Green Plains would pay $101 million (the purchase price) plus the value of the Inventory and raw materials as of the Closing Date, *less* a Shortfall Amount (amount by which accounts payable[3] exceeded accounts receivable), or *plus* an Excess Amount (amount by which accounts receivable exceeded accounts payable).

On November 20, 2013, Joel Wiegert, the lead attorney who negotiated the DILFA on behalf of FNB Omaha, emailed Mapes and attached various draft conveyance documents: (1) from the Borrowers to the Lenders; and (2) from the Lenders to Green Plains. The Assignments of Contracts were included among these documents. For the first time, the Assignments of Contracts included a Disclaimer Provision. The Disclaimer Provision was inserted into Schedule I. Schedule I had been left blank for the purpose of listing assumed contracts.

The Disclaimer Provision provided: "[EHC's] acceptance of the Assignor's[4] assignment of the foregoing contracts shall not constitute an assumption by [EHC] of the obligations thereunder." Mapes was not specifically informed about the addition of the Disclaimer Provision. Additionally, no one from EHC sent Mapes

---

[3] Accounts Payable was broadly defined under the APA as "the value of all liabilities assumed by the Seller that survive the Closing, whether current or noncurrent, as determined under GAAP." Motion for Summary Judgment ("Mot. Summ. J.") (Trans. ID. 59002590), Ex. 3: Asset Purchase Agreement, § 1.01.

[4] The Assignors were Buffalo Lake and Pioneer Trail. Each executed Schedule I to their respective Assignment of Contracts with an identical Disclaimer Provision.

6

a copy of the Assignments of Contracts with the completed Schedule I containing the Disclaimer Provision.

On November 22, 2013, Andrew Wong, President of EHC, executed the Assignments of Contracts, which included the Disclaimer Provision, on behalf of EHC. On the same date, Lenders and Borrowers closed on the DILFA, and EHC and Green Plains then closed on the APA.

On December 23, 2013, pursuant to Section 2.06 of the APA, Green Plains sent its calculation of the Shortfall Amount to EHC. Green Plains calculated the Shortfall Amount to be $11,835,475.18, thereby resulting in $5,517,284.75 owed by EHC to Green Plains.

EHC contends that there is no provision in the APA, DILFA, or Assignments that required EHC to assume a liability that would survive the closing. Accordingly, EHC argues that the Accounts Payable Amount does not exceed the Accounts Receivable Amount, and thus the Shortfall Amount is zero.

7

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[5] All facts are viewed in a light most favorable to the non-moving party.[6] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to specific circumstances.[7] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[8] If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[9]

## ANALYSIS

### *Disclaimer Provision*

#### Parties' Contentions

##### *Green Plains*

Green Plains contends that the Disclaimer Provision is invalid and unenforceable because FNB Omaha, as Administrative Agent, did not have authority to unilaterally amend Schedule I to the Assignments of Contracts. Green

---

[5] Super. Ct. Civ. R. 56(c).
[6] *Hammond v. Colt Indus. Operating Corp.*, 656 A.2d 558, 560 (Del. Super. 1989).
[7] Super. Ct. Civ. R. 56(c).
[8] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plains asserts that the Disclaimer Provision is a substantive term that materially alters the DILFA. Green Plains argues that in order to comply with the DILFA's Anti-Amendment provision, the amendment must have been in writing and signed by both parties—FNB Omaha and Borrowers. Green Plains contends that permitting FNB Omaha to unilaterally amend the DILFA would render the anti-amendment clause a "mere surplusage" in violation of Delaware law.

Green Plains claims that FNB Omaha only had the right to fill in the blanks of the Assignments of Contracts—adding the date, the name of the assignee, and the list of assigned contracts. Green Plains contends that by inserting the Disclaimer Provision, FNB Omaha exceeded its scope of authority as Administrative Agent. Green Plains points to the depositions of both Wu and Wong. Both testified that FNB Omaha "would simply provide a list of those assumed contracts and identify them under Schedule I . . . ."[10]

*EHC*

EHC argues that the Court, in its February 9, 2015 Opinion, already has found that the APA is ambiguous. EHC contends that the resolution of the ambiguity is a trial issue for the jury and, therefore, summary judgment is inappropriate and the case must proceed to trial.

---

[10] Mot. Summ. J., Ex. A: Deposition of Christopher Wu at 112:15–21; Ex. B: Deposition of Andrew Wong at 219:12–17.

In the alternative, EHC argues that if the Court determines that the APA is unambiguous, it should find that the Disclaimer Provision in the DILFA is valid and enforceable. EHC contends that the Administrative Agent was authorized to populate any incomplete schedules to the DILFA before closing. EHC states that when the Borrowers signed the DILFA, the circumstances related to the assumption of liabilities under the contracts that would be listed in Schedule I were unknown by the parties. Section 2 of each Assignment of Contracts provides: "Assignee hereby accepts such assignment of Assignor's right, title, estate and interest in, to and under solely those contracts that are set forth in Schedule I attached hereto." EHC argues that Section 2 purposely omitted language that would address whether EHC would or would not assume any of the liabilities under the contracts to be added to Schedule I upon the closing of the DILFA. EHC claims that this language was omitted so that the desired outcome could be addressed at the eventual closing.

EHC next contends that Green Plains reviewed and approved Schedule I prior to closing. EHC states that on November 20, 2013, prior to closing, Wiegert emailed Mapes and expressly directed her to review and comment on Schedule I to each Assignment of Contracts. EHC argues that Green Plains had every opportunity to review the Disclaimer Provision prior to closing and could have

10

objected to it and refused to close the APA. Instead, Green Plains chose not to do so.

EHC admits that Green Plains was not a party to the DILFA. However, EHC states that Green Plains was a party to the APA, which stated that Green Plains would acquire Deed in Lieu assets and would assume liabilities "acquired, assumed or incurred by the Seller in connection with the Deed in Lieu Closing pursuant to the Deed in Lieu Documents . . . ."[11] Therefore, EHC argues, to understand the assets that Green Plains acquired and the liabilities it assumed, someone at Green Plains would have been obliged to read the Deed in Lieu Documents, including Schedule I. EHC contends that the Disclosure Provision cannot be considered invalid and unenforceable because of Green Plains' failure to read it and assert a timely objection prior to closing.

## Discussion

Contract terms are interpreted according to their plain, ordinary meaning, unless there is an ambiguity.[12] "Contract language is not ambiguous merely because the parties dispute what it means."[13] Rather, contract language is ambiguous only if it is reasonably susceptible of two or more interpretations, or

---

[11] Mot. Summ. J., Ex. 3: Asset Purchase Agreement, § 2.02(c).
[12] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).
[13] *Id.*

11

can have two or more different meanings.[14] "When there is uncertainty in the meaning and application of the terms of the contract [the Court] will consider testimony pertaining to antecedent agreements, communications and other factors which bear on the proper interpretation of the contract."[15]

The Court, in its February 9, 2015 Opinion, held that the timing of the addition of the Disclaimer Provision to the end of Schedule I to the Assignments of Contracts presented a genuine issue of material fact at that stage of the proceedings.[16] Having reviewed the testimony of the parties, the Court now finds that the timing of the Disclaimer Provision is no longer a genuine issue of material fact. The testimony of the parties demonstrates that the DILFA was executed on April 11, 2013, and was placed in escrow pending closing. EHC admits that the Disclaimer Provision was added to the end of Schedule I to the Assignments of Contracts a few days before closing. On November 22, 2013, Wong executed the Assignments of Contracts, which included the Disclaimer Provision, on behalf of EHC. On the same date, Lenders and Borrowers closed on the DILFA, and EHC and Green Plains then closed on the APA.

---

[14] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).
[15] *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991).
[16] *Green Plains Renewable Energy Inc.*, 2015 WL 590493, at *5.

Having found that the timing of the addition of the Disclaimer Provision no longer presents a genuine issue of material fact, the Court must determine whether the provision was validly added to Schedule I to the Assignments of Contracts.

Section 27 of the DILFA provides: "This Agreement may not be amended except by an amendment in writing signed by all parties hereto." The validity of the Disclaimer Provision turns on whether it is a substantive amendment or merely an item that was contemplated by the parties to be filled in by the Administrative Agent.

In his deposition, Wu admits that the Disclaimer Provision is substantive:

Q:    The last provision does not identify a contract that's being assigned from the borrowers to EHC; correct?

A:    Right.

Q:    But, rather, it's a substantive provision; correct?

A:    Yes.

Q:    And you testified that this provision is a material term; correct?

A:    Yes.[17]

Additionally, Wiegert admitted that in the event that EHC had to operate the Ethanol Plants, and thus would have to assume obligations under the contracts, EHC would have had to eliminate the Disclaimer Provision.[18] Such a concession

---

[17] Mot. Summ. J., Ex. A: Deposition of Christopher Wu at 261.
[18] Mot. Summ. J., Ex. C: Deposition of Joel Wiegert at 164–65.

demonstrates that the provision had a substantive effect on the DILFA and the obligations of the parties thereto.

Before Schedule I to the Assignments of Contracts was populated by FNB Omaha, it read:

## <u>SCHEDULE I—ASSUMED CONTRACTS</u>

### [to be provided by Administrative Agent on or before Closing]

The plain language leads to only one reasonable interpretation—that the blank space in Schedule I would be filled in with a list of contracts. There is nothing to indicate that the parties contemplated that Schedule I would contain anything more than a list.

EHC's argument that the Administrative Agent was granted broad authority and flexibility to amend Schedule I by adding the Disclaimer Provision is without merit. EHC admits that there is no provision in the DILFA that distinguishes or alters the rights and obligations of the Lenders depending on whether or not a buyer is found.[19] Rather, FNB Omaha's flexibility pertained to the determination of whether and when to close.[20] Further, as was conceded by both Wu and Wong, FNB Omaha had the limited authority to complete the Assignments of Contracts

---

[19] Mot. Summ. J., Ex. B: Deposition of Andrew Wong at 75.
[20] Mot. Summ. J., Ex. 2, § 3(b).

14

by providing a list of the contracts to be assumed.[21] FNB Omaha was not permitted to substantively amend the Assignments of Contracts by adding a provision that was not reviewed by and consented to by both parties—Lenders and Borrowers.[22] Green Plains was not a signatory to the DILFA, Assignments of Contracts, or Schedule I.

The Court finds that the Disclaimer Provision is a substantive amendment. Therefore, the Disclaimer Provision is invalid and unenforceable because FNB Omaha, as Administrative Agent, did not have the authority to unilaterally amend Schedule I to the Assignments of Contracts with a substantive provision.

### *Assumption of Liabilities*

#### Parties' Contentions

##### *Green Plains*

Green Plains contends that under the Assignments of Contracts, EHC agreed to assume all liabilities pertaining to such contracts that accrued prior to the closing of the DILFA. Green Plains argues that the circumstances surrounding the negotiation and drafting of the Assignments of Contracts demonstrate that the

---

[21] Mot. Summ. J., Ex. A: Deposition of Christopher Wu at 112:15–21; Ex. B: Deposition of Andrew Wong at 219:12–17.

[22] In the February 9, 2015 Opinion, the Motion to Dismiss was decided on the basis of ambiguity and the question was left open as to whether the DILFA was incorporated by reference into the APA through Section 13.09's integration clause. Because the Court finds that the Disclaimer Provision was not validly added, the Court again need not address the integration issue.

parties contemplated EHC taking on both the pre-closing benefits (accounts receivable) and burdens (accounts payable).

First, Green Plains argues, Wiegert and Wu both admitted that at closing EHC was going to assume certain Acknowledged Liabilities that were noted on the term sheets exchanged between the parties.[23] Among the listed Acknowledged Liabilities was the Federated Contract, which also appeared on Schedule I to the Assignment of Contracts. Accordingly, Green Plains contends that EHC's argument—that it never intended to assume any liabilities—directly conflicts with the plain terms of the executed documents.

Second, Green Plains argues that the negotiations between Green Plains and EHC demonstrate that the parties anticipated EHC assuming pre-closing liabilities. The "Illustrative Gross Purchase Price to Net Lender Proceeds" prepared by EHC shows that EHC expected to pay certain "Outflows," including accounts payable.[24] Green Plains claims that EHC has admitted that the approach laid out in these charts, which was shared with both Green Plains and EHC's Board of Managers, was consistent with the terms of the APA.[25]

Third, Green Plains contends that EHC's position that it did not assume any pre-closing liabilities contradicts well-established contract interpretation rules,

---

[23] Mot. Summ. J., Ex. A: Deposition of Christopher Wu at 71–72; Ex. C: Deposition of Joel Wiegert at 31–32.
[24] Mot. Summ. J., Ex. 23.
[25] Mot. Summ. J., Ex. D: Deposition of Joseph Kavan at 84–85.

16

negates the terms mutually agreed to by Borrowers and Lenders, and leaves numerous portions of the DILFA without purpose or meaning. Green Plains argues that the DILFA makes clear that Lenders agreed to be responsible for obligations as "expressly provided herein or in the Payment Schedule (as to amounts to be paid at Closing, in the ordinary course or assumed)."[26] Green Plains contends that pursuant to the Payment Schedule, Lenders agreed to assume and pay at closing accounts payable "relating to goods and services delivered prior to closing, subject to review and approval by Administrative Agent of final A/P schedule as of the closing date."[27] Green Plains argues that under EHC's interpretation—that it assumed no pre-closing liabilities—several terms of the DILFA would be superfluous and of no effect.

Green Plains further argues that EHC's position would render several provisions of the APA meaningless. The definition of "Accounts Payable Amount" carves out an exception for "any Asset Retirement Obligations" owed to Cargill by Borrowers or EHC.[28] Green Plains claims that this exclusion would be unnecessary if EHC never assumed any liabilities and the Accounts Payable Amount was always $0.00.

---

[26] Mot. Summ. J., Ex. 2: Deed in Lieu Of Foreclosure Agreement and Joint Escrow Instructions, § 8.

[27] Mot. Summ. J., Ex. 2: Deed in Lieu Of Foreclosure Agreement and Joint Escrow Instructions, Schedule XI: Schedule of Closing Payments.

[28] Mot. Summ. J., Ex. 3: Asset Purchase Agreement, § 1.01.

17

Similarly, Section 2.03 was amended to include a purchase price adjustment that took into account a "Shortfall Amount" and an "Excess Amount." The Shortfall Amount was defined as the amount by which accounts payable exceeded accounts receivable. The Excess Amount was defined as the amount by which accounts receivable exceeded accounts payable. Green Plains contends that if the Accounts Payable Amount was always $0.00, there was no need to amend the APA to include a calculation of these amounts.

*EHC*

EHC contends that the DILFA did not require the assumption of liabilities by Lenders in the event of the Ethanol Plant sale to Green Plains. EHC claims that the DILFA was drafted with the flexibility to accommodate alternative potential structures at closing. EHC argues that this flexibility was crucial because at the time the DILFA was signed, a buyer had not been identified and there was uncertainty as to whether Lenders would have to operate the Ethanol Plants. Accordingly, EHC states, Lenders were prepared for two scenarios: (1) No Buyer Found; and (2) Buyer Found. If no buyer was found, Lenders would take possession of and operate the Ethanol Plants for some period of time. To the extent Lenders required goods and services under the Borrowers' contracts with vendors and suppliers in order to operate the Ethanol Plants, it likely would have been necessary for Lenders to assume liabilities under such contracts in order to

18

continue performance. If a buyer was found, Lenders would transfer the Ethanol Plants directly to a qualified third-party buyer. EHC contends that under the "Buyer Found" scenario, no prudent commercial lender would ever assume liabilities under contracts for which it was simply acting as a conduit to the ultimate owner-operator.

EHC states that, in fact, a buyer for the Ethanol Plants was found. The table closing for the DILFA and APA was structured such that EHC would act merely as a conduit through which the Ethanol Plants would be transferred from Borrowers to Green Plains, and Green Plains would take possession directly from Borrowers. According to this "Buyer Found" scenario, EHC argues that FNB Omaha, as Administrative Agent, exercised the authority provided to it under the DILFA to expressly disclaim any assumption of liabilities under each Schedule I. EHC contends that although the contracts were briefly assigned to EHC, it never assumed the obligations thereunder and, therefore, assumed no liabilities that survived the closing.

Discussion

In its February 9, 2015 Opinion, the Court held:

> Green Plains' interpretation—that EHC assumed liabilities under the APA—is reasonable because several APA provisions expressly provide for EHC's assumption of liabilities. No APA provisions specifically state that EHC was only acting as a "pass-through" to facilitate the transaction.

19

At the same time, EHC's interpretation that EHC did not assume any liabilities is reasonable, given the simultaneous closings of the APA and DILFA. Further, EHC contends that it never operated the ethanol production facilities.

Viewing the plain language, the Court finds that the APA is ambiguous as to whether EHC assumed liabilities because the APA is reasonably susceptible of different interpretations.[29]

Wiegert and Wu both testified that at closing, EHC was going to assume certain Acknowledged Liabilities that were noted on the terms sheets exchanged between the parties.[30] Wu testified that it was the intent of the parties to have these term sheets incorporated into the DILFA. One of the liabilities listed was the Federated Contract. The Federated Contract also appears on Schedule I to the Assignment of Contracts. Accordingly, the executed documents indicate that EHC intended to assume certain liabilities under the Assignments of Contracts.

Additionally, the negotiations between Green Plains and EHC demonstrate that EHC anticipated taking on pre-closing liabilities. EHC prepared a spreadsheet, titled "Illustrative Gross Purchase Price to Net Lender Proceeds." EHC created the spreadsheet in preparation for a call with Green Plains so that the parties could "walk through the remaining money issues that relate to [Green Plains] to make sure we're on the same page."[31] The spreadsheet notes certain

---

[29] *Green Plains Renewable Energy Inc.*, 2015 WL 590493, at *5.
[30] Mot. Summ. J., Ex. A: Deposition of Christopher Wu at 71–72; Ex. C: Deposition of Joel Wiegert at 31–32.
[31] Mot. Summ. J., Ex. 23.

"Inflows" that EHC anticipated receiving, including the purchase price and the amount of outstanding accounts receivable. The spreadsheet also includes certain "Outflows," including accounts payable and other accrued expenses. If EHC did not believe that it would be responsible for any liabilities under the assigned contracts that accrued prior to closing, accounting for "Outflows" would have been unnecessary.

EHC's argument—that it would have been "completely illogical" for the Lenders to assume liabilities under contracts for the Ethanol Plants that Lenders would never own or operate—is without merit. This scenario is not only the conventional mechanism for ethanol plants, but was recognized as such by EHC. Pursuant to a true-up provision, the seller of an ethanol plant typically is responsible for any accounts payable that accrue prior to closing, while the purchaser is responsible for accounts payable that accrue after the closing. The record demonstrates that EHC was aware of the true-up process and intended to implement it in the closing.

In an email dated May 17, 2013, Christopher Wu stated:

> 60 days after closing there can be a true up since [the Pioneer Trail plant] is operating and the inventory would need to be measured as a point in time prior to closing and once again for the adjustment post closing. As stated in a prior email, this is the conventional mechanism for ethanol plants.[32]

---

[32] Mot. Summ. J., Ex. 18.

Wu's email recognizes that a true-up will be necessary to determine pre- and post-closing costs to be allocated to the appropriate parties. Further, Section 2.03 of the APA includes a purchase price adjustment whereby Green Plains would pay the purchase price plus the value of the Inventory and Materials Amount, *less* a Shortfall Amount (amount by which accounts payable exceed accounts receivable), or *plus* an Excess Amount (amount by which accounts receivable exceed accounts payable). If EHC never intended to assume any liabilities, the Accounts Payable Amount always would have been zero, and this calculation would have been unnecessary.

The undisputed facts, including the testimony of the parties and the executed documents, demonstrate that interpreting the APA no longer involves genuine issues of material fact. The Court finds, as a matter of law, that EHC is liable for all accounts payable that accrued prior to closing, consistent with the APA's definition of Accounts Payable Amount.

### *Shortfall Amount*

#### Parties' Contentions

Green Plains argues that because EHC is liable for pre-closing liabilities under the contracts, it must pay the Shortfall Amount to Green Plains. Green Plains has calculated the Shortfall Amount as $11,835,475.18, and therefore contends that EHC owes Green Plains $5,517,284.75.

22

EHC contends that it assumed no liabilities that survived the closing. Therefore, EHC argues, the Accounts Payable Amount is zero and the Shortfall Amount is zero.

## Discussion

The Court has found that EHC is liable for all accounts payable that accrued prior to closing, consistent with the APA's definition for Accounts Payable Amount. Accordingly, the Court finds that EHC is liable for the Shortfall Amount. Although Green Plains has proven that it is entitled to the Shortfall Amount, the precise amount for which EHC is liable is disputed.

The parties shall confer as to how to resolve the Shortfall Amount. GPRE has suggested that the parties submit the dispute over the amount to an independent accounting firm for determination pursuant to the terms of the APA. The parties may also choose to resolve the dispute through a bench trial or by submitting the case to mediation or other ADR.

## CONCLUSION

The Disclaimer Provision is a substantive amendment that materially alters the DILFA. FNB Omaha did not have authority to unilaterally add the provision. Therefore, the Court finds that the Disclaimer Provision is invalid and unenforceable.

The documents and undisputed testimony of the parties demonstrate that interpreting the APA no longer involves a genuine issue of material fact. Undisputed extrinsic evidence leads the Court to find that the APA can be susceptible of only one reasonable interpretation. The Court finds, as a matter of law, that EHC is responsible for accounts payable that accrued prior to closing. Therefore, EHC is liable for the Shortfall Amount.

The parties shall confer and agree upon a process to resolve the issue of calculating the precise Shortfall Amount that is due to Green Plains.

**THEREFORE,** Plaintiffs Green Plains Renewable Energy, Inc., Green Plains Wood River, LLC, and Green Plains Fairmont, LLC's Motion for Summary Judgment is hereby **GRANTED IN PART and DENIED IN PART.**

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

24